UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DAVID L. BENNETT )
 )
V. ) NO. 2:15-CV-148
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

MEMORANDUM AND ORDER

This matter is before the United States Magistrate Judge upon the consent of the parties and an order of reference from the District Judge [Doc. 20] for final disposition. This is an action for judicial review of the final decision of the defendant Commissioner denying the plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act following a hearing before an Administrative Law judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 15], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 17].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal*

*Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 42 years of age on his alleged disability onset date of January 1, 2013. He is now 45 and is still a "younger" individual under the regulations. He has a high school education with several years of college. There is no dispute that he cannot perform any of his past relevant work.

Plaintiff's medical history is set forth in his brief as follows:

> In connection with a prior application of the Plaintiff, the Plaintiff was evaluated by Dr. Marianne E. Filka, and she diagnosed the Plaintiff as suffering from bilateral knee pain, right worse than left after an injury, as well as numerous other conditions (Tr. 278). She opined that the Plaintiff should not work where falling would pose a safety risk and should avoid repetitive kneeling, squatting, stooping, crouching or crawling, and should not be climbing ladders or scaffolding, although he could climb stairs or ramps without restrictions (Tr. 279).
> The Plaintiff was seen by Frontier Health for a mental evaluation in January 2012 (Tr. 314-325). He had been depressed and suicidal (Tr. 315).
> The Plaintiff was seen at Sycamore Shoals Hospital in Elizabethton, Tennessee in January 2013. A CT of the lumber spine showed mild scoliosis in the lumbar spine convexity to the left. Mild degenerative changes were present (Tr. 342).
> The Plaintiff was cared for by the Rural Health Services Consortium for abdominal pain (Tr. 368). He was diagnosed as suffering from abdominal pain in the left lower quadrant. He also had hypertension (Tr. 376). It was noted that he

2

had low back pain with paresthesia to the left lower extremity extended to the left knee. His pain was aggravated by bending, twisting, and flexing of the hip (Tr. 391). In November 2012, he was diagnosed as suffering from costochondritis and gastroesophageal reflux disease (Tr. 396). In December 2012, it was thought that he had degenerative disk disease of the lumbar spine (Tr. 400). In January 2013, it was noted that the pain had worsened (Tr. 402). In January 2013, it was noted that the Plaintiff had chronic low back pain with noted degenerative disc disease of the lumbar spine (Tr. 404).

The Plaintiff was evaluated by Mr. Wade Smith, a psychologist, on March 22, 2013. He diagnosed the Plaintiff as suffering from a Pain Disorder associated with both Psychological Factors and a General Medical Condition and it was opined that his GAF was 55. It was thought that the Plaintiff's concentration and persistence was adequate to meet the demands of simple or some detailed work-related decisions and he could interact with others in an appropriate manner and could manage his own hygiene. The Plaintiff did not appear to be limited in his ability to adapt to changes in the work place but his physical problems might detract from his ability to maintain attention and meet an employment schedule (Tr. 421).

An x-ray performed at Franklin Woods Community Hospital in April 2013, showed a transitional vertebrae at S1 but the disk heights were normal (Tr. 424).

The Plaintiff was evaluated by Dr. Jonathan Wireman on behalf of the Defendant on August 28, 2013. He noted that the Plaintiff had back problems (Tr. 446). He diagnosed the Plaintiff as suffering from low back pain with no imaging available for review and limited cooperation on exam, hypertension, hyperlipidemia, an episode of chest pain, and GE reflux (Tr. 448). He opined that the Plaintiff could likely stand or walk for six hours out of an eight hour shift and sit for six hours out of an eight hour shift with frequent position changes and frequent to reasonable breaks. He could likely lift 10 pounds frequently and 30 pounds occasionally and appeared capable of handling his own affairs (Tr. 449).

The Plaintiff continued to be cared for by the Rural Health Services Consortium. In June 2013, he was diagnosed with degenerative disk disease of the lumbar spine (Tr. 462). In July 2013, he had abdominal bleeding (Tr. 464). He was also diagnosed as suffering from Crohn's disease of the large intestine (Tr. 470). In February 2014, it was noted that he was having pain in his hip (Tr. 480).

The Plaintiff underwent an MRI of the left hip on April 7, 2014. This showed avascular necrosis of the left femoral head with diffuse adjacent edema extending to the neck and interochanteric region. There was also reactive edema involving the left acetabulum. There was associated small/moderate joint effusion and mild femoral head collapse by approximately 3mm over the superior anterior articular margin. There was also an incidental nonaggressive right femoral bone lesion most consistent with small enchondroma (Tr. 503). The Plaintiff underwent a total hip arthroplasty of the left hip for avascular necrosis of

3

the left hip performed by Dr. John R. Testerman (Tr. 508). On July 24, 2014, it was noted that he had some anterior capsular tightness and tenderness in the rectus femoris at the attachment of the reflected head attachment to the acetabulum. He was using a cane and it was advised that he could use it as long as he felt like he needed it (Tr. 510). In October 2014, it was noted that the Plaintiff was still using a cane and that when he put weight on his left he felt the aching pressure. The Plaintiff was walking with an antalgic gait. X-rays showed degenerative disk disease, osteophyte formation and some narrowing of the disk spaces in the lumbar spine and Dr. Testerman believed that was the reason the Plaintiff was limping and Dr. Testerman thought the plaintiff had limited ability to bend, stoop, sit for long periods of time, or walk for long periods of time. He would have difficulty in going up and down stairs. He had limitations from his back problem in lifting, bending, stooping, climbing stairs and he should not be around unprotected heights. As a result of his hip replacement, the Plaintiff was unable to run, jumb, be around unprotected heights, and should avoid climbing stairs and avoid either hyperextension or hyperflexion of his hip (Tr. 511). Dr. Testerman diagnosed the Plaintiff as suffering from status post total hip arthroplasty of the left, and degenerative disc disease of the lumbar spine (Tr. 512).

[Doc. 16, pgs. 2-5].

At the administrative hearing on November 18, 2014, the ALJ called Donna Bardsley, a vocational expert ["VE"]. He asked Ms. Bardsley various hypothetical questions. First, he asked her to assume a person who could do light exertion (lifting 10 pounds frequently and 20 pounds occasionally), but whose standing and walking were restricted to two hours total out of an eight hour day. Also, the person would need to be allowed to use a cane while walking. They could not climb ladders, ropes and scaffolds. They could not crawl. The person could occasionally use ramps and stairs, occasionally balance, stoop, kneel and crouch. They could not have a concentrated exposure to vibration. They could not work around unprotected heights or hazardous, moving mechanical parts. When asked if there were jobs such a person could perform, Ms. Bardsley stated that there would be a limited number, and that they would be sedentary in

4

nature. She identified 1,385 jobs in the region and 92,116 in the nation which that person could perform (Tr. 61). Those jobs would be available even if the ALJ found the person was limited to sedentary work with the additional restrictions (Tr. 62).

In his hearing decision filed on December 4, 2014, the ALJ found that the plaintiff had severe impairments of degenerative disc disease of the lumbar spine and avascular necrosis of the left hip, status post hip replacement surgery (Tr. 33). He found that the plaintiff's hypertension and hypercholesterolemia did not constitute severe impairments. After finding that the impairments did not meet or equal any listed impairments in the regulations, he found the plaintiff had the same residual functional capacity ["RFC"] contained in his hypothetical question to the VE (Tr. 24).

He then discussed the evidence he considered. He noted the plaintiff testified that he cannot lift anything, cannot bend over and that he has difficulty walking. He described the difficulties that these symptoms cause him, such as difficulty in putting on socks and shoes. The ALJ noted that the plaintiff feeds his fish and takes care of its tank. He mentioned that the plaintiff cleans dishes, goes outside every day, is able to drive a car, grocery shops, watches TV for a couple of hours per day and fishes perhaps once a year. He stated that plaintiff attends church twice a week and teaches a 40 minute class at church. Plaintiff uses a back brace (Tr. 35).

The ALJ discussed the consultative examination done on February 2, 2012. Dr. Filka opined that the plaintiff "should not work where falling would pose a safety risk to himself or others and he should avoid repetitive kneeling, squatting, stooping, crouching

5

or crawling; should not be climbing ladders or scaffolding, but could climb stairs or ramps without restriction." He noted that Dr. Filka did not place any other restrictions on the plaintiff (tr. 35-36).

He discussed plaintiff's treatment records from Bluff City Medical Center. He noted that

> [w]hen seen in April 2013, the severity of the claimant's lumbar degenerative disc disease was described as mild and improved. It was noted that that although the claimant had been seen multiple times over the past six months for low back pain, he did have a CT of the lumbar spine revealing mild degenerative disorder and mild scoliosis. Possible use of a TENS unit and back brace was discussed; however, barriers to treatment were finances and lack of insurance. Work restrictions were placed in June 2013; no lifting over 15 pounds for a timeframe of six weeks.

(Tr. 36).

The ALJ then mentioned records from Bristol Regional Medical Center in 2012. He noted that a CT scan was of the plaintiff's abdomen and pelvis taken in May 2012 was normal (Tr. 37).[1] The ALJ discussed the basically normal mental examination performed by Wade Smith. As plaintiff raised no issue regarding the failure to find a mental impairment, this will not be discussed any further.

The ALJ noted an x-ray of the lumbar spine in April 2013, which showed a transitional vertebra at S1, but vertebral body heights and alignment were normal, disc

---

[1] This CT scan appears to have been referred to by Dr. Testerman, plaintiff's treating surgeon, and will be discussed later.

6

heights were normal and no evidence of fracture or subluxation (Tr. 37). The ALJ then discussed the consultative physical exam performed by Dr. Jonathan Wireman on August 28, 2013, at the request of the Commissioner. The ALJ indicated that Dr. Wireman suspected a lack of cooperative effort on the part of the plaintiff during a range of motion study of plaintiff's back due to the fact that the plaintiff had no difficulty rising from a chair or getting on and off the examination table. He noted that Dr. Wireman stated that the Disability Determination Section provided no imaging for him to examine or medical records to review. The ALJ mentioned that Dr. Wireman opined that the plaintiff could stand or walk for six hours and sit for six hours "with frequent position changes and frequent to reasonable breaks." (Tr. 38).

The ALJ next addressed the records of Dr. John Testerman, plaintiff's treating physician, who performed plaintiff's hip replacement surgery at Bristol Regional Hospital on April 30, 2014. The ALJ stated that Dr. Testerman found that plaintiff's "preoperative hip pain was resolved, but he still had persistent chronic lumbar spine pain. He suffered an insurance lapse as he was terminated from his occupation prior to surgery." (Tr. 38) The ALJ then noted that Dr. Testerman "believes that the reason why the claimant is limping and as a result will limit his ability to bend, stoop, sit for long periods of time or walk for long periods of time, he will have some difficulty going up and down stairs." *Id.* To decipher this, the Court presumes that the ALJ is attempting to quote from Dr. Testerman's office note of October 23, 2014, where Dr. Testerman discusses a hospital portal CT scan believed to be the one referred to above from May

2012. There, Dr. Testerman noted

> [a]lthough these films [were] obtained for evaluation of the abdomen and pelvis, bone windows and sagittal reconstruction confirms the above diagnoses. I believe this is the reason why the plaintiff is limping and as a result will limit his ability to bend, stoop, sit for long periods of time or walk for long periods of time.

(Tr. 511). The ALJ then continues to quote from this treatment note, stating that the plaintiff advised Dr. Testerman he would contact him if he became able to afford further radiological studies. The ALJ notes that Dr. Testerman also stated that "as a result primarily of the back problem he does have limitations of both lifting, bending, stooping, climbing stairs; so no unprotected heights." (Tr. 38).

The ALJ then mentions the State Agency psychologists who stated that the plaintiff had only mild mental function difficulties. He discussed the State Agency physicians who basically found that the plaintiff could perform a full range of medium work, but that he gave "not much weight" to their assessment. (Tr. 39).

He then stated that the plaintiff was "not entirely credible for the reasons explained in this decision." In this regard, the ALJ said "[t]he objective evidence of record establishes that the claimant does experience back pain; however, he is able to stand, walk and bend in a satisfactory manner." (Tr. 39).

The ALJ then states that he gave great weight to the State Agency psychologists. He gave little weight to the State Agency physicians and to Dr. Wireman because they came before the plaintiff's avascular necrosis and hip replacement surgery. He gave

8

"greater weight" to "Dr. Testerman as his restrictions are generally supported by the record as a whole." (Tr. 39). He then stated that his RFC finding was supported by the objective evidence. He said "[t]he claimant has a history of intermittent treatment for low back pain with mild objective findings." *Id.* He concluded saying "the claimant should be able to perform less than a full range of light work." (Tr. 39).

Based upon the plaintiff's age, education and vocational experience, the ALJ noted that the plaintiff would be found "not disabled" under the Medical-Vocational Guidelines (the "Grid") if he could perform the full range of light work. However, since plaintiff was limited to a reduced range of light work, he relied upon the testimony of the VE to find that there were a significant number of jobs which the plaintiff could perform. Accordingly, he found the plaintiff was not disabled. (Tr. 40-41).

Plaintiff asserts that the VE's testimony is not supported by substantial evidence because it did not accurately portray all of the plaintiff's individual impairments, as required by *Varley v. Secretary of H.H.S.*, 820 F.2d 277 (6th Cir. 1987). In particular, plaintiff asserts that the question to the VE, and the ALJ's determination of plaintiff's RFC upon which it was based, did not contain all of the limitations identified by Dr. Testerman, plaintiff's treating surgeon. Moreover, the ALJ did this after ascribing greater weight to "Dr. Testerman as his restrictions are generally supported by the record as a whole." Specifically, the ALJ did not include in the RFC finding that plaintiff had limitation in his ability for lifting, bending, stooping, climbing stairs, and to sit, stand and walk for long periods of time, all of which were included in the same opinion of Dr.

9

Testerman which contained the restrictions the ALJ did use in his RFC finding. (See Tr. 511, *Dr. John Testerman's Treatment Plan*). There is no explanation in the hearing decision directly addressing why these restrictions opined by Dr. Testerman were rejected by the ALJ.

Plaintiff also asserts that the opinion of Dr. Wireman, the consultative physical examiner, supports the opinion of Dr. Testerman in that he opined that the plaintiff would require "frequent position changes" between sitting and standing/walking during the workday. Of course, the ALJ gave little weight to the opinion of Dr. Wireman because his exam took place before Dr. Testerman diagnosed and repaired the problem with the plaintiff's hip.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)). *Wilson* notes that the regulation requires the ALJ to "give good reasons … for the weight [given the claimant's] treating source's opinion." *Id*. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996); see also, *Wilson,* 378 F.3d at 544.

The ALJ did not include Dr. Testerman's restrictions on lifting, bending, stooping, and sitting/standing in his RFC but offered no explanation as to his reasoning. The Commissioner offers that explanation. She asserts that the ALJ did not include those limitations because the CT scan to which Dr. Testerman referred was "years-old." But the ALJ did not hold to that as a reason for rejecting Dr. Testerman's opinion, and the Court is uncertain why the age of the CT scan would affect his opinion. After all, the CT scan revealed degenerative disc disease.

It is true that Dr. Testerman states in that same treatment note that plaintiff is financially unable to afford "a full workup of his MRI scan, x-rays and evaluation for possible epidural steroid injections…" (Tr. 511). But he does not suggest that these additional imaging studies would negate his opinion that the plaintiff would have trouble bending, or sitting/walking. Instead, it would seem that it would give him a clearer picture of what could be done to alleviate those conditions.

The Commissioner asserts that "the ALJ accounted for (Dr. Testerman's restrictions) in the residual functional capacity (RFC) formulation to the extent consistent with the evidence as a whole." [Doc. 18, pg. 4]. The ALJ actually asked the VE to assume the functional limitation of "light exertion, but with standing and walking restricted to two hours total out of an eight-hour workday…allowed to use the hand-held assistive device when walking. No climbing of ladders, ropes and scaffolds. No crawling. Otherwise, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, and crouching." (Tr. 61). Whereas Dr. Testerman indicated that the claimant is

11

"limited in his ability to bend, stoop, sit for long periods of time, walk for long periods of time. He will have some difficulty going up and down stairs." (Tr. 511).

The Commissioner states that Dr. Testerman was treating the plaintiff's hip, not his back. But the Court does not find this argument sufficiently persuasive to discount Dr. Testerman's opinion. Dr. Testerman was claimant's neurosurgeon who found a neurological cause for plaintiff's pain.

The Commissioner also asserts that the ALJ could have discounted those portions of Dr. Testerman's opinion because Dr. Testerman did not provide a full RFC assessment or state with specificity the degree of limitation he was assessing. That argument is well taken, but Dr. Testerman's statement seems unequivocal to the Court. Plaintiff would limp, be limited in bending, and limited in sitting/walking for long periods of time. To be sure, however, the ALJ did not raise this ground, or any other ground, for rejecting those portions of Dr. Testerman's opinion.

The plaintiff also points out that Dr. Wireman, the consultative examiner who examined the plaintiff for the Commissioner in 2013, opined that the plaintiff would require frequent position changes between sitting and standing. He was not provided with any of plaintiff's medical records or x-rays by the Disability Determination Section, and based this opinion on what he had observed in his physical examination of the plaintiff. It is true that Dr. Wireman found that the plaintiff was not putting forth a good effort during some parts of the range of motion studies. However, in spite of noting this, Dr. Wireman was of the opinion that plaintiff would have these difficulties, which

12

support the opinion of Dr. Testerman. Defendant argues that Dr. Wireman's restriction "is neither supported by the results of Dr. Wireman's one-time consultative examination – at which no imaging studies were available to review and Plaintiff exhibited a lack of 'cooperative effort' – nor the record as a whole" [Doc. 18, pg. 8]. But this restriction is the opinion of the consultative examiner hired by the Social Security Administration through the Tennessee Disability Determination Services, and it is consistent with the treating physician's opinion. In this same regard, the DDS acting on behalf of the SSA did not provide any records or images for Dr. Wireman to review. But even in the absence of any records, he offered his opinion even though he did not believe the plaintiff was giving his exam a full effort.

Thus, in this case, we have the reports of two examining physicians, one of them a treating source, who opined that the condition of the plaintiff's lower back would limit him in standing and walking. Arrayed against this evidence are the opinions of the State Agency doctors who were not given any weight because they predated the plaintiff's hip replacement surgery. There is also the x-ray of plaintiff's lumbar spine dated April 22, 2013 (Tr. 424). Although the x-ray showed normal vertebral body heights and alignment, and normal disc heights with no evidence of fracture or subluxation, it also showed a transitional vertebra at the S1 level. Therefore, it was not a completely "normal" x-ray. He was treated for chronic lower back pain throughout the time period surrounding the taking of the x-ray (Tr. 433-445). Dr. Testerman noted hemisacralization of the L5 lumbar vertebra, which factored into his opining that the plaintiff would have trouble

with long term sitting and standing/walking (Tr. 511). The radiological evidence, including the April 22, 2013 x-ray, does not detract from Dr. Testerman's opinion.

Finally, the Commissioner argues that the ALJ decides the issue of a person's RFC, and that he or she is not required to base the RFC finding on a physician's opinion because that "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability…" *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719-728 (6th Cir. 2013). That is correct, but *Rudd* does not remove the requirement for the ALJ to at least explain why he rejected evidence from a treating source, as required by regulations, Social Security Rulings, and other cases cited above. There simply must be some medical support for the lay ALJ's RFC determination, at least in a case such as the present one where the examining and treating physician both opine an additional restriction. That this is a close case is borne out by the fact that the ALJ found that the plaintiff must use a cane to ambulate and that the VE identified less than 100,000 jobs in the entire nation the plaintiff could perform.

In this case, the ALJ offered no explanation for not including a need to change positions, as opined by Dr. Testerman and supported by the opinion of Dr. Wireman. This alone, under the facts of the present case, requires at least a remand for that explanation to be offered. The Court finds the Commissioner's position is not substantially justified. Upon remand, the Commissioner will need medical evidence other than that contained in the present record to support a finding that Dr. Testerman's opinion is incorrect regarding the limitation on sustained sitting and walking.

Accordingly, the case will be REMANDED to the Commissioner for further consideration of the opinion of Dr. Testerman. To this extent, the plaintiff's Motion for Judgment on the Pleadings [Doc. 15] is GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 17] is DENIED.

SO ORDERED,

    s/ Clifton L. Corker
United States Magistrate Judge